Jorge L. ALVAREZ

v.

SECRETARY OF HEALTH AND HUMAN SERVICES.

Civ. A. No. 79–3456.

United States District Court, E. D. Pennsylvania.

Oct. 29, 1982.

Michael M. Goss, Philadelphia, Pa., for plaintiff.

Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

On May 17, 1976, plaintiff, Jorge Alvarez, filed for Social Security Disability and Supplemental Security Income benefits under 42 U.S.C. §§ 423, 1382c (1976). On July 13, 1979, an administrative law judge (ALJ) found that Alvarez was not entitled to disability benefits. The ALJ's decision was affirmed by the appeals council. Plaintiff then filed suit in this court on September 24, 1979. The case was referred to a magistrate and based on the magistrate's Report and Recommendation, the case was remanded to the Secretary for further consideration because of the ALJ's (1) disregard of the findings of treating physicians while giving great weight to the evaluation of a one-time examining physician; (2) failure to give proper weight to plaintiff's emotional and mental problems; and (3) failure to require the testimony of a vocational expert.

On remand, two further hearings were held before two ALJs not previously involved with the case, and plaintiff was again found not eligible to receive benefits. This decision was also affirmed by the appeals council.

On June 21, 1982, plaintiff filed a motion to reinstate with this court and thereafter both parties filed motions for summary judgment pursuant to 42 U.S.C. § 405(g) (1976 & Supp. IV 1980) seeking judicial review of the Secretary's decision. Under this section, the court's role is limited to determining whether the Secretary's decision is supported by substantial evidence— "evidence a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *Winfield v. Mathews,* 571 F.2d 164, 168 (3d Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978).

Although I might have found otherwise were I considering the matter *de novo,* I conclude, after careful examination of the entire record, that the Secretary's decision is supported by substantial evidence and the Secretary is, therefore, entitled to summary judgment.

Jorge Alvarez is a 38 year old man with a seventh grade education. He was born in Puerto Rico, does not write English and reads only some words. He has held a variety of unskilled jobs as a custodian, truck driver, orderly, loader of sheepskins, metal cutter, and as a construction and farm laborer.

Alvarez claims to have become disabled in September 1974, primarily because of lower back, ankle and knee problems. In addition, he periodically suffers from chest pains, allergies, sinus problems, stomach pains, and ear infections. He is nervous and depressed; his medical condition is exacerbated by his family problems; his wife is disabled, one child has spina bifida, and another child has recurrent medical problems. Plaintiff contends that the combination of these physical, mental, and emotional problems constitutes a disability.[1]

---

1. Plaintiff also states in his brief that he "meets or exceeds" the impairments contained in Appendix 1, 12.04 of the Social Security Regulations, 20 C.F.R. § 404.1598 (1982) which reads:

As noted, after this case was remanded in March 1982, the Department of Health & Human Services held two additional hearings, the first before ALJ Roseman and the second before ALJ Marden. Each ALJ issued a decision. Because the second decision explicitly adopts the findings of fact set forth in the first, Record at 230, it is appropriate to consider the two together in determining whether the benefit denial is supported by substantial evidence.

ALJ Roseman found that plaintiff suffered from psychogenic arthritis of the left knee, low back syndrome, chronic left ankle sprain, instability of the knees and upper respiratory infection of an exertional nature, but that he retained enough residual functional capacity to perform sedentary jobs.[2] Record at 258–59. The ALJ also found that claimant's testimony about his pain was not credible as to the severity and duration that plaintiff had described. ALJ Roseman found that plaintiff's mental and

emotional problems did not significantly affect his residual functional capacity. Record at 259. The appeals council, in reviewing this last finding, determined that more evidence was needed. Record at 242. At the second post-remand hearing, ALJ Marden considered the evaluations of an additional psychiatrist, psychologist, and vocational expert and found that plaintiff's emotional and mental problems did not significantly reduce his functional capacity. Record at 235.

Alvarez objects specifically to the ALJs' findings concerning pain and the cumulative effects of emotional, mental, and physical problems. I will review each finding and the evidence supporting it separately.

### Pain

Alvarez' testimony and medical records contain claims of various types of pain, most seriously in the left knee and

12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and construction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

Both Dr. Wallace, a consulting psychiatrist, Record at 445, and Dr. Klores, a consulting psychologist, Record at 434, .rated plaintiff's impairments based on psychological problems as mild to moderate. There was no evidence offered to suggest that the impairment is more severe. There is, therefore, substantial evidence to support the ALJ's finding that the plaintiff's mental and emotional problems by themselves do not constitute a disability.

2. The ALJ must follow the sequential decision-making process described in 20 C.F.R. § 404.-1520 (1982). *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982). If the claim is not denied in Step 1 because the claimant is still working, or in Step 2 because there is no "severe," work-limiting impairment, the ALJ must then decide whether the impairment equals or exceeds impairments listed in Appendix 1 of the regulations. If it does, the claimant is automatically awarded benefits. If it does not, as in the instant case, the ALJ determines whether the claimant has sufficient "residual functional capacity"—what the claimant can still do despite his or her limitations—to perform his or her prior work. If not, the ALJ must decide whether, considering the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other gainful work within the economy. At this final step in the instant case, both ALJs decided that plaintiff could perform gainful work and was, therefore, ineligible for disability benefits.

ankle and in the lower back, of such severity as to render him unable to stand or walk for longer than fifteen minutes or sit for more than one half hour. Record at 351–52. Had the ALJ found this testimony credible, it would have established a claim of disability. Pain, in and of itself, can be disabling and claimant's assertions of pain must be given serious consideration, even where the assertions are not fully confirmed by objective evidence. *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981). ALJ Roseman discussed the credibility issue in some detail. Record at 257–58. In discussing the reports of both treating and consultative physicians, the ALJ noted that findings were of tenderness and discomfort rather than of pain.[3] He also noted the paucity of objective evidence of conditions which would cause the ankle, knee, and back pain, the absence of loss of motion because of pain, and the absence of any consistent treatment for diagnoses which might be the basis for the pain.

Subjective complaints may provide the basis for an award of benefits even though the testimony is unsupported by objective medical data. *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971). "This does not mean, however, that the ALJ may not gauge the credibility and weight of the subjective testimony against the other evidence in the record. . . ." *Torres v. Harris,* 494 F.Supp. 297, 300 (E.D.Pa.1980), *aff'd,* 659 F.2d 1071 (3d Cir. 1981). The ALJ seems to have done that weighing in this case and found plaintiff's descriptions of severity and duration of pain not credible. I must defer to the factfinder on issues of credibility. *Davis v. Califano,* 439 F.Supp.

94, 98 (E.D.Pa.1977). "If [the ALJ] explicitly addresses the issue in his decision and his conclusion is supported by evidence he has the discretion to reject a claim."

The ALJ did find that plaintiff's knee, ankle, and back problems precluded all but sedentary work, but that the back pain, from which plaintiff had suffered for many years during his working career, did not prevent all significant work activity. In making this finding, the ALJ correctly acknowledged that the absence of objective evidence was not dispositive, but was only a factor to be considered. Record at 257.

The ALJ's decision can be supported by the medical reports as discussed above, and by the fact that plaintiff had worked for many years with back pain and provided no evidence of exacerbation of the condition. Record at 257. Although the ALJ did not discuss it, I am impressed by the fact that not one of plaintiff's own physicians expressed the opinion that plaintiff's pain was disabling or even instructed him to restrict his activities. Based on these factors,[4] I hold that the ALJ's finding relating to plaintiff's pain is supported by substantial evidence.

## Cumulative Impairment

■ Alvarez also takes issue with the ALJ's finding that his physical and psychological problems, when considered together, do not equal a disability. I disagree and hold that the ALJ's finding is supported by substantial evidence.

In assessing plaintiff's medical problems, the ALJs made the following findings: (1)

---

**3.** While it is true that the medical reports do speak most often of discomfort and tenderness, there are some findings of pain in the left knee and ankle. In addition, plaintiff's back problem has been diagnosed as low back pain. The ALJ's statement, therefore, although exaggerated, is substantially true.

**4.** In finding the assertions of pain not credible, the ALJ also relied on plaintiff's responses to questions about his current activities. Record at 257. While the plaintiff did testify that he aided a relative with house painting, after fifteen minutes it was necessary for him to stop work. Record at 291. And while he testified

that he accompanied his wife on grocery shopping trips, he stated that he did not actually do the shopping but merely waited for her outside the store. Record at 307. The ALJ's description of the plaintiff as being engaged in house painting and grocery shopping is really a mischaracterization. Record at 257. Even if plaintiff did occasionally participate in these activities, such sporadic or transitory activity would not disprove disability. *Smith v. Califano,* 637 F.2d 968 (3d Cir.1980). Plaintiff's daily activities really provide little additional support for a finding of non-disability.

many of his ailments were acute rather than chronic; (2) he had been successfully treated for lymphangitus and urinary infections and no longer suffered from these complaints; (3) he still required periodic treatment for ear infections and allergies, and for gastritis, when it was not controlled by proper diet and medication; and (4) his musculoskeletal impairments were the most serious problems affecting plaintiff's capacity for work and prevented him from performing other than sedentary jobs. Record at 256.

In seeking to evaluate the additional effect of Alvarez' psychological problems on his residual functional capacity, ALJ Roseman solicited the opinion of Dr. Julius Romanoff, a vocational expert. Dr. Romanoff opined that Alvarez had not utilized the available community resources in dealing with his problems and was currently in need of help. Record at 323–24. The effect of these problems on plaintiff's capacity to work, according to Dr. Romanoff, would depend on the severity of the identified emotional problems. At the time Dr. Romanoff testified, the only information in the record about plaintiff's mental/emotional condition, was contained in the reports of Dr. Schut, a psychiatrist, and of Edward Fish, who had administered a battery of psychological tests to plaintiff. Dr. Schut had diagnosed plaintiff as having a depressive neurosis. Mr. Fish found that plaintiff was very tense and anxious and suffered severe neurotic and somatic symptoms. Record at 213–17. Neither of these reports evaluated the degree of impairment caused by plaintiff's psychological problems.

After the hearing held by ALJ Roseman and before the one held by ALJ Marden, plaintiff was evaluated by Dr. Wallace, a psychiatrist, and Dr. Klores, a psychologist. Dr. Wallace rated the effects of plaintiff's impairments as mild in all cases except plaintiff's ability to perform complex tasks where the effect was rated moderate and his ability to perform simple tasks where there was no limitation. Record at 444–45. Dr. Klores rated plaintiff's limitations as mild or moderate. Record at 434–35. Although both doctors found that plaintiff suffered psychological problems,—Dr. Wallace diagnosed hypochondrical neurosis with an explosive personality and Dr. Klores suspected a possible brain malignancy and suggested further tests—each concluded that there were no severe effects on plaintiff's residual functional capacity from these problems.

The earlier psychological evaluations do not contradict those of Drs. Wallace and Klores and the plaintiff has submitted no psychological evidence of his own. Dr. Wallace's and Dr. Klores' evaluations of plaintiff's limitations based on psychological problems, therefore, should be given significant weight. These evaluations support the ALJs' finding that plaintiff's cumulative problems do not equal a disability.[5]

5. The testimony of the second vocational expert, Dr. Morris Rubin, at the January 1982 hearing, provides little assistance in determining the cumulative limitations from all plaintiff's problems because of the extreme nature of the hypothetical questions presented to Dr. Rubin. Record at 398, 407.

ALJ Marden's hypothetical question was based on the consultative examination of Dr. Gonzalez who performed an internal medicine examination of plaintiff before the final hearing. Dr. Gonzalez' evaluation was very unfavorable to plaintiff's claim of disability. Dr. Gonzalez found plaintiff capable of sitting for six hours at a time, standing for six hours and walking for eight hours, and capable of significant lifting. This evaluation contradicts prior evaluations of physicians for the Department of Health and Human Services and ALJ Roseman's finding that plaintiff could perform only sedentary work. It is, however, the basis for all of ALJ Marden's questions to Dr. Rubin. Dr. Rubin's opinion that, based on the impairments found by Drs. Gonzalez, Wallace, the psychiatrist, and Klores, the psychologist, plaintiff could perform several jobs existing in the national economy, therefore, is of little value. Record at 400–402.

Plaintiff's attorney asked Dr. Rubin to assume that plaintiff suffered from all the conditions and diagnoses in the medical reports and from all the pain and problems to which plaintiff had testified. Dr. Rubin found plaintiff incapable of performing any work based on these assumptions. Again, this opinion is of little value since the underlying premises disagree significantly with the findings of ALJ Roseman who found plaintiff's description of the severity and duration of his pain not credible, Record at 259, and found that many of the

In summary, I find that the Secretary's decision to deny disability benefits based on plaintiff's existing residual functional capacity is supported by substantial evidence. Summary judgment will be entered for the Secretary.

conditions plaintiff suffered were either temporary conditions which no longer affected him or were conditions controlled by medication.